UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE COMPANY; fka CHARTIS SPECIALTY INSURANCE COMPANY, AS SUBROGEE OF SHERWIN ALUMINA, LLC, | § § § § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 2:18-CV-16 |
| ACE AMERICAN INSURANCE COMPANY, *et al*, | § § § | |
| Defendants. | § § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff AIG Specialty Insurance Company (ASIC) filed this action against Turner Industries Group, LLC (Turner) and Ace American Insurance Company (ACE) to obtain reimbursement for monies paid and defense costs incurred in the course of defending and settling a personal injury case brought by one of Turner's employees against ASIC's insured, Sherwin Alumina, LLC (Sherwin). ASIC's claims for breach of contract are based on Turner's agreement to indemnify Sherwin and provide insurance under a master service agreement (MSA) and ACE's responsibility to provide policy proceeds to Sherwin as an additional insured on Turner's policy.

Before the Court are summary judgment motions filed by each of the parties: ASIC (D.E. 19), Turner (D.E. 29), and ACE (D.E. 30). Also before the Court are the various responses, replies, and evidentiary objections of each of the parties (D.E. 30, 31, 32, 33, 35, 43, 44, 45, 50, 51, 52, 53). For the reasons set out below, the Court GRANTS

IN PART and DENIES IN PART ASIC's motion (D.E. 19); DENIES ACE's motion (D.E. 30); and GRANTS IN PART and DENIES IN PART Turner's motion (D.E. 29) as more fully set out below.

## FACTS

### A. Turner's Agreement with Sherwin

Sherwin agreed to hire Turner as an independent contractor to perform separately-contracted services pursuant to an MSA fully executed on March 30, 2010. D.E. 19-1. Under the MSA, Turner agreed to maintain control of the worksite and "be responsible for making sure that the Work is done in a safe manner [and] . . . be solely responsible for the training, supervision, safety, and health of all [Turner] employees . . ." D.E. 19-1, ¶ 4. "[Turner] is solely responsible for inspecting the Work site on a daily basis to ensure that the Work is being done in a safe manner and that the Work is in compliance with all safety rules and regulations." *Id*.

Turner further agreed to indemnify Sherwin for certain claims for bodily injury that might be brought against Sherwin by Turner employees and to provide insurance through additional insured endorsements on Turner's policies. *Id.*, ¶ 11. Turner's indemnity obligation to Sherwin was set out in the MSA as follows:

> 11. [TURNER'S] INDEMNITY OF [SHERWIN]. (a) TO THE EXTENT OF ITS NEGLIGENCE OR LEGAL FAULT WHICH DIRECTLY CAUSES THOSE DAMAGES MORE SPECIFICALLY DESCRIBED HEREIN, [TURNER] SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS [SHERWIN] from and against any and all claims, losses, demands, causes of action, lawsuits, damages, costs, actions, judgments, expenses and liabilities (including, but not limited to, [Sherwin's] reasonable attorneys' fees and costs and

expenses of defense), which is [sic] directly connected with or arise out of performance of the Work, including but not limited to actual or alleged bodily injury (including illness or death). Subject to the foregoing, this indemnity, as defined above, shall include, but is not limited to, claims or damages brought by third persons, Subcontractors, or agents or employees of either of the parties to this Agreement, damage to or destruction of any property, real personal or otherwise, or any other matters in any way connected with the Work, or any action on or condition of the Owner's premises associated with performance of the Work.

It is further acknowledged that a portion of the price to be paid to [Turner] by [Sherwin] for the work serves as consideration for [Turner's] indemnity obligations under this contract. Subject to the foregoing, [Turner] shall defend [Sherwin] in such proceeding at [Turner's] expense with a maximum of $500,000 consequential damages exposure, but only to the extent such consequential damages are valid and collectible under [Turner's] Commercial General Liability insurance, or, if [Sherwin] elects to handles [sic] its own defense, [Turner] shall promptly reimburse [Sherwin] for all of [Sherwin's] attorneys' fees and costs and expenses of raising a defense against any such claims as referenced herein, including expenses, costs of suit and attorneys' fees.

D.E. 19-1, ¶ 11. The insurance paragraph of the MSA further states:

10. INSURANCE. (a) [Turner] shall not commence performance of the Work until it has furnished [Sherwin] with certificates of insurance satisfactory to [Sherwin] certifying that valid insurance policies are in effect and will remain in effect until the Work has been fully performed. Such policies shall provide for (i) Workers' Compensation insurance in statutory limits and including a provision far waiver of subrogation to the extent of [Turner's] indemnification obligations expressly assumed under Article 11 of this Contract . . . (ii) Employer's Liability insurance . . . (iii) Comprehensive General Liability Insurance (including, but not limited to, coverage for Broad Form Property Damage, Contractual Liability and Personal Injury) with a combined single limit of liability of $10,000,000 per occurrence for

> bodily injury and property damage, and (iv) Comprehensive Automobile Liability insurance . . . .
>
> (b) To the extent of [Turner's] indemnification obligations expressly assumed under Article 11 of this Contract, [Turner] agrees that, except for the Worker's Compensation insurance, [SHERWIN] SHALL BE NAMED AS ADDITIONAL INSURED IN ALL OF THE FOREGOING INSURANCE POLICIES with a statement to that effect set forth in the certificates of insurance furnished to [Sherwin]. . . .
>
> (c) The foresaid insurance coverage is intended to protect [Sherwin], against any and all claims, losses, damages, costs, action, judgments, expenses and liabilities which is are [sic] directly connected with or arise out of the performance of the Work, wherever such may occur. . . .

D.E. 19-1, ¶ 10.

Turner did, in fact, obtain the insurance policies that the MSA required. The ACE Comprehensive General Liability Insurance Policy No. HDOG26437593 at the center of this case was effective March 1, 2012 through March 1, 2013, and includes additional insured endorsements #27 and #109. D.E. 19-9, p. 70; 29-1, p. 28; D.E. 29-1, p. 25. And the Certificate of Liability Insurance issued to Sherwin does indicate that the policy contains an additional insured endorsement and a waiver of subrogation. D.E. 29-1, p. 26.

## B.  The Warren Injury and Claim

On November 15, 2012, Edward Warren (Warren), as Turner's employee, went to the Sherwin plant to perform emergency descaling work, involving washing down the top, mezzanine, and bottom floors of the press floor. D.E. 19-5, 19-6. While working on a platform attached to a catwalk structure, the tack welds on a square of metal grating

below Warren's feet gave way, causing him to fall through the resulting hole, suffering serious and permanent bodily injuries. *See* Warren's Petition, D.E. 29-1.

Warren received benefits from Turner's workers compensation policy, barring him from making any additional claims against Turner.[1] Warren then sued Sherwin and its plant manager[2] as owner and operator of the property, alleging negligence in the form of premises liability and gross negligence, as well as failing to maintain a safe work environment. *Id*.

Sherwin contends that any defect in the catwalk grating was caused by Turner in that Sherwin had previously hired Turner as an independent contractor to perform work that required cutting through the grating to obtain access to certain facilities and the subsequent repair of the grating once the work was done. Furthermore, at the time Warren was on the premises, Turner had agreed under the MSA to assume liability for the safety of the work environment and all employees. D.E. 19-1. Sherwin named Turner as a responsible third party and made a demand for a defense and indemnity from Turner and ACE. *See* D.E. 19-3, 19-7, 19-8, 9-14. Turner and ACE denied the claim on the basis that the indemnity agreement in the MSA was limited, did not require Turner to indemnify for the negligence or gross negligence of Sherwin or its plant manager, and violated the express negligence rule. D.E. 19-3, 19-12, 19-14.

---

[1] Tex. Labor Code § 408.001.

[2] Chester Leo Ingersoll, Jr., Sherwin's plant manager, was named in Warren's suit. Because the master service agreement defines "Owner" as Sherwin, along with its directors, officers, employees, agents, and representatives, the Court's reference to Sherwin includes Ingersoll without distinction.

After ACE denied the claim, Sherwin settled the case for the ASIC policy limits.[3] ASIC then filed this breach of contract action as Sherwin's subrogee for reimbursement of that amount, along with its defense costs.

## STANDARD OF REVIEW AND APPLICABLE LAW

**Texas Law**.  This action is before the Court pursuant to its diversity jurisdiction. 28 U.S.C. § 1332.  D.E. 1.  The law of the forum state thus governs the substantive disposition of ASIC's state law breach of contract claims.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Texas law further applies to "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State."  Tex. Ins. Code art. 21.42.  Furthermore, the indemnity agreement at issue here provides that Texas law shall govern any contract dispute.  D.E. 19-1, ¶ 30.

**Question of Law**.  The parties' respective motions seek construction of a policy of insurance and an indemnity agreement.

> Under Texas law, insurance policies are construed according to ordinary contract principles.  "The interpretation of an insurance policy is a question of law" for the court to determine.  "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."  All of the provisions of the policy must be considered with reference to the whole instrument, so that no single provision alone is given controlling effect.

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014).

---

[3]   The Confidential Settlement Agreement and Release that resolved the Warren claim has been tendered to the Court for in camera inspection pursuant to the Court's Order of October 22, 2018 (D.E. 28) to be considered as part of the summary judgment record, but has not been filed in the public record of this case.

**Summary Judgment**.  Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251–52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## DISCUSSION AS TO ASIC/ACE MOTIONS

### A. ACE's Liability on its Policy

There is no dispute that the ACE policy covers ASIC's claim as Sherwin's subrogee if Sherwin is an additional insured for Warren's claim. ASIC's claim to coverage is based on the policy's additional insured endorsement #27, the construction of which is hotly contested:

POLICY NUMBER: HDO G26437593

ENDT. #27

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. The Company, however, shall have no obligation to defend or indemnify any such person or organization unless and until the Named Insureds obligation to defend and indemnify is accepted by the Named Insured and agreed to by the Company or determined by judgement.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

ASIC claims that the only requirement for being treated as an additional insured is clearly satisfied: Prior to November 15, 2012, Turner executed the MSA in which it agreed to provide additional insured status to Sherwin.

ACE's defense is based on a number of arguments spanning the MSA, Endorsement #27, Endorsement #109, and the Certificate of Insurance issued to Sherwin. They can be summarized as follows:

- Certificate of Insurance. The language of the Certificate of Insurance shows the intent of the additional insured endorsements to extend coverage commensurate only with the extent of the indemnity obligations of the MSA.

- Endorsement #27, first sentence. The scope of coverage available to Sherwin is impliedly commensurate with the scope of the indemnity obligation in the MSA, the written contract triggering Endorsement #27. The MSA does not require Turner to indemnify Sherwin for Sherwin's own negligence and gross negligence. Therefore, Endorsement #27 does not confer coverage for Warren's claims.

- Endorsement #109, first sentence. The policy endorsement that applies is #109, not #27. Endorsement #109 expressly limits additional insured status to situations to which the duty of indemnity in the underlying contract extends. Therefore, Sherwin is not entitled to additional insured coverage, again arguing that the MSA does not provide for indemnity for Sherwin's own negligence and gross negligence.

- Predetermination Requirement; Endorsements #27 and #109, second sentence. Under both Endorsements #27 and #109, the policy obligations require a second triggering mechanism: the named insured's acceptance of the duties to defend and indemnify or a judicial determination, neither of which has occurred.

- Waiver and Estoppel. ASIC may not invoke matters outside the policy to suggest that the ACE policy offers coverages that its terms do not.

- ASIC Policy. No decision regarding ASIC's rights as Sherwin's subrogee can be made without consideration of ASIC's policy. That policy may reveal a failure to cover Ingersoll (the plant manager) and

may have a pro-rata requirement for coordinating with the ACE coverage, if any.

Each of these arguments is discussed, in turn, below.

**1. ACE Policy**

    **a. Certificate of Insurance**

ACE notes that a Certificate of Liability Insurance (D.E. 29-1, pp. 25-26) issued to Sherwin shows that additional insured coverage is offered "only to the extent of the named insured's obligations to indemnify, defend and/or hold harmless the certificate holder." Assuming for now that the MSA does not require Turner to indemnify Sherwin for Warren's claim, ACE suggests that the Certificate evidences that limitation on coverage. The Court does not agree.

In addition to the fact that the Certificate is dated March 22, 2018, long after Warren suffered his injury and filed his lawsuit against Sherwin, by its own terms it does not evidence coverage. A preamble in the Certificate states:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

D.E. 29-1, p. 25. The Court rejects any argument that the Certificate evidences the scope of the disputed insurance coverage afforded by the policy at issue here, consistent with

the Fifth Circuit's decision in *Lexington Ins. Co. v. Autobuses Lucano Inc*., 256 F. App'x 682, 684 (5th Cir. 2007) (per curiam).

### b. Endorsement #27

Setting aside, for now, the predetermination argument addressed below, Endorsement #27 affords Sherwin additional insured coverage for the *Warren* settlement through its first sentence. The parties devoted substantial briefing to the question whether the additional insured coverage was limited by the terms of the MSA. In particular, they debated whether the insurance coverage was limited to the scope of Turner's indemnity obligation or its duty to provide coverage for non-completed operations.

The Texas Supreme Court very recently reiterated its test regarding the extent to which the terms of an external contract can be held to modify the terms of an insurance policy: *Exxon Mobil Corp. v. Insurance Co. of State of Pennsylvania*, No. 17-0200, 2019 WL 638992, at *9 (Tex. Feb. 15, 2019). The court wrote, "we determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document *to the extent required by the policy*." (emphasis in original, quoting *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015)).

The additional insured language in Endorsement #27 only requires reference to the written contract (MSA) to determine if Turner agreed to make Sherwin an additional insured prior to the date of loss. By not referencing the written contract for any other purpose, ACE does not get the benefit of any limitation on Turner's indemnity obligation

that might be supported by full incorporation of the MSA into the policy's terms. The fact that the carrier's obligation to provide insurance to an additional insured might exceed the scope of the named insured's liability is a risk taken when the carrier fails to reference the terms of the outside contract for purposes of determining the scope of liability.

ACE concedes the import of the *Exxon* case. DE 51. However, it contends that Endorsement #27 does not apply for other reasons addressed below.

### c. Endorsement # 109

ACE argues that Endorsement #27 does not apply because Endorsement #109 was issued later and is a better fit for the purpose of the obligations imposed on Turner under the MSA. Even assuming that a later endorsement governs over a conflicting earlier one,[4] ACE has failed to demonstrate that Endorsement #109 was in effect before the date of loss. The evidence to which ACE refers, the December 18, 2018 Affidavit of Thomas M. Sandahl (D.E. 44-1), shows that Endorsement #109 was issued to replace Endorsement #40 (not Endorsement #27) after the inception of the policy and was made effective as of the inception of the policy. But it does not say whether that happened prior to November 15, 2012. The Court cannot apply an alternative endorsement that the evidence fails to show to have been in effect at the time of loss.

Additionally, ACE has not shown that Endorsement #109 necessarily conflicts with Endorsement #27. Instead, ACE concedes that both Endorsement #27 and Endorsement #109 are "potentially applicable." D.E. 44, p. 8. "[I]f a contract of

---

[4]  *INA of Texas v. Leonard*, 714 S.W.2d 414, 417 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.).

insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). The Court rejects ACE's argument that Endorsement #109 applies instead of Endorsement #27 as contrary to the evidence, contrary to the language on the face of the endorsements, and as contrary to the rules of construction.

### d. Predetermination Requirement

ACE further argues that it does not matter which endorsement applies because they both contain the identical predetermination requirement:

> The Company, however, shall have no obligation to defend or indemnify any such person or organization unless and until the Named Insured's obligation to defend and indemnify is accepted by the Named Insured and agreed to by the Company or determined by judgment.

Endorsement #27, #109; D.E. 19-9, pp. 70, 178. In essence, ACE interprets this sentence as modifying the scope of policy coverage commensurate with a judicial determination of the terms of the MSA indemnity agreement, without the necessity of expressly incorporating the MSA. Construing all of the terms of the policy together, the Court does not reach the same conclusion.

First, ACE's construction renders both additional insured endorsements illusory. Sherwin, the additional insured, would be entitled to no policy benefits unless Sherwin obtained a judgment that Turner was liable. That means Sherwin would not be entitled to a defense in the *Warren* case until Sherwin was able to collect against Turner, putting the cart before the horse and essentially leaving Sherwin without a defense. And Sherwin

would recover nothing more than the policy benefits that would be owed to Turner—a result that can be obtained without necessity of an additional insured endorsement. Under those conditions, status as an additional insured is meaningless. A contract is illusory if the obligations of a party cannot be triggered under any circumstances. *See, e.g., In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

Second, ACE's construction renders the first sentence of both additional insured endorsements meaningless. There is no reason to set out the manner of determining who is an additional insured and the scope of that coverage in the first sentence of each endorsement if it is overridden by the terms of the second sentence of the same endorsement. In fact, ACE's construction makes the first and second sentences of Endorsement #109 functionally repetitive.

To harmonize and give meaning to both endorsements and all of the language in each endorsement, the only reasonable construction treats the first sentence as determining the scope of additional insured coverage and the second sentence as determining the timing of the obligation to provide policy benefits. In that regard, the judgment referred to in the final phrase of the predetermination sentence relates to a judgment that ACE's obligation to provide coverage to Sherwin has been triggered pursuant to the scope set out in the first sentence.

Removing the alternative of Turner accepting and ACE agreeing, the sentence reads:

> [ACE], however, shall have no obligation to defend or indemnify [Sherwin] unless and until . . . determined by judgment.

While ACE argues that this is not grammatically correct, the Court disagrees. It is equivalent to saying that ACE shall have no obligation unless and until the Court says so. What is determined by judgment is the obligation to defend or indemnify (pursuant to the first sentence of the endorsement). That is consistent with "unless and until" referring to the invocation of the additional insured endorsement and the timing issues governing insurance carriers and claims. This is further consistent with the well-established procedure in insurance law of seeking a declaratory judgment on the duty to defend at the outset of the underlying case.

### e. Waiver and Estoppel

While there have been suggestions that representatives of ACE have made admissions against interest regarding the interpretation of the additional insured endorsements, ASIC has conceded that it does not seek to establish coverage by waiver or estoppel. D.E. 32, p. 13. Rather, it references prior denials of Sherwin/ASIC's claim to show that the denials are wrongful, thereby eliminating ACE's right to challenge the reasonableness of the *Warren* settlement. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 671-74 (Tex. 2008).

The Court does not apply *Evanston* on this summary judgment record because the Court's interpretation of Endorsement #27 and its predetermination requirement raises questions that the parties have not addressed. In particular, is ACE's denial of coverage (even if for the wrong reason) sufficient to establish wrongful denial when neither of two alternative predicate acts stated in the additional insured endorsement have taken place: (1) the Named Insurer's (Turner's) acceptance of the obligation to defend or indemnify;

or (2) a court has determined ACE's obligation to defend and indemnify? The Court reserves that question for future proceedings.

### f. Conclusion

In sum, the Court holds that Sherwin is entitled to additional insured status on the ACE policy under Endorsement #27 for the *Warren* claim and that the scope of the policy is determined by its own terms without reference to any limitations on the indemnity obligations of Turner in the MSA. This holding satisfies the predetermination requirement of the second sentence of Endorsement #27, and—as a matter of timing— any obligations ACE owes under its policy are now fully triggered, whether or not they were previously triggered, an issue the Court need not address at this time.

### 2. ASIC Policy

ACE defends against the amount of ASIC's subrogation claim on the basis that it did not submit evidence of its own policy covering Sherwin, leaving Sherwin's proof inadequate on three issues: (1) whether ASIC did, in fact, owe coverage to Sherwin rather than voluntarily defending the *Warren* case and paying to settle the claim; (2) whether ASIC's policy covered Ingersoll as well as Sherwin such that any settlement of Ingersoll's liability can be included in the subrogation claim; and (3) whether that coverage was subject to only a pro-rata recovery based on the respective policies' coordination of benefits provisions.

ASIC first notes that the ASIC policy had been provided to ACE, such that ACE could have submitted the policy to the Court if it supported its defense or was necessary to a claim for offset. ASIC then attached a copy of its policy covering Sherwin and

defining "insured" to include its managers and employees, such as Ingersoll. D.E. 32-2, p. 30, 32. And the "Other Insurance" provisions make the ASIC policy excess over the ACE policy. *Id*. at 37. After ASIC provided its policy, ACE did not dispute any of these propositions related to its terms.

The Court holds that any prerequisites for ASIC's claim as subrogee of Sherwin, which includes Ingersoll, have been satisfied.

### 3. Evidentiary Objections

ACE and ASIC both made objections to each other's summary judgment evidence, primarily on hearsay and parole evidence grounds. The Court's holdings do not depend on the content of any of the evidence to which objections were made. The Court OVERRULES the objections as moot.

### DISCUSSION AS TO TURNER'S MOTION

ASIC has sued Turner for breach of the MSA with respect to Turner's alleged failures to provide insurance and indemnity. As set out above, the Court has concluded that Turner did, in fact, secure insurance in the form of the ACE policy with the additional insured endorsement. Therefore, the Court DISMISSES the breach of contract claim based on paragraph 10 of the MSA. D.E. 19-1, p. 2.

Turner's defense against any obligation of indemnity is twofold: (1) Warren's claims against Sherwin were based solely on Sherwin's own negligence and gross negligence and the MSA does not satisfy the requirements for making Turner indemnify Sherwin for its own negligence or gross negligence; and (2) under workers compensation law, Warren's claim against Sherwin cannot be used to make an end-run around the

protection afforded an employer by the bar against additional claims after the employer's
workers compensation benefits have been conferred.

**A. Indemnity for Sherwin's Own Negligence and Gross Negligence**

It is undisputed that the indemnity agreement in the MSA does not expressly and
conspicuously call for Turner to indemnify Sherwin for Sherwin's own negligence.
Ordinarily, that would be fatal to ASIC's indemnity claim. *Ethyl Corp. v. Daniel Const.
Co.*, 725 S.W.2d 705, 708 (Tex. 1987). However, ASIC argues that Turner's actual
knowledge of the indemnity agreement eliminates both the requirement that indemnity
for Sherwin's own negligence be expressed and be conspicuous. The Court disagrees.

The indemnity agreement begins with the qualification "TO THE EXTENT OF
ITS NEGLIGENCE OR LEGAL FAULT WHICH DIRECTLY CAUSES THOSE
DAMAGES MORE SPECIFICALLY DESCRIBED HEREIN, CONTRACTOR SHALL
DEFEND, INDEMNIFY AND HOLD HARMLESS OWNER . . . ." D.E. 19-1, ¶ 11.
Without determining whether an actual notice exception applies to the express negligence
rule of *Ethyl*, the Court holds that this conspicuous qualification of Turner's indemnity
obligation expressly limits Turner's liability to its own negligence or fault.

This construction of the indemnity agreement thus leaves open the question
whether ASIC, as Sherwin's subrogee, can establish that its settlement with Warren
included liability based on responsibilities that Turner had contractually assumed, raising

questions of Turner's own negligence or fault.[5]  What is eliminated from consideration is only the claim that the full settlement amount is Turner's obligation on its face.

### B.  Workers Compensation Bar

While Warren's claims were asserted exclusively against Sherwin and Ingersoll (and not Turner), that is not a function of Turner being free of liability for its own negligence or fault.  Rather, it is the result of the statutory workers compensation bar, preventing Warren from making additional claims against his employer, Turner, after obtaining workers compensation benefits.  Tex. Labor Code § 408.001.  The Labor Code acknowledges that an employee may, instead, make his claims against a third party, such as Sherwin.  In that event, the following applies:

> In an action for damages brought by an injured employee . . . against a third party liable to pay damages for the injury or death under this chapter that results in . . . a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement **unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability**.

Tex. Labor Code § 417.004 (emphasis added).

Under the MSA, Turner agreed to assume liability for its employee's "supervision, safety, and health."  D.E. 19-1, ¶ 4.  "Contractor is solely responsible for inspecting the Work site on a daily basis to ensure that the Work is being done in a safe manner and that the Work is in compliance with all safety rules and regulations."  *Id*.  The indemnity

---

[5]   Turner cites *International Proteins Corp. v. Ralston-Purina Co*., 744 S.W.2d 932, 934 (Tex. 1988) and *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) as holding that a defendant's settlement of tort claims does not preserve statutory or common law contribution rights under common law or the comparative negligence statute.  But ASIC is not seeking statutory or common law contribution.  It is seeking Turner's indemnity for a contractually assumed liability for its employee's personal injury claims arising out of work in the course and scope of employment.

provision further indemnifies against claims brought by Turner's employees for "any other matters in any way connected with the Work, or any action on or condition of the Owner's premises associated with performance of the Work." *Id.*, ¶ 11(a).

These provisions clearly contemplate Turner's liability to Sherwin for allegations of negligence in the nature of premises liability and allegations for the failure to provide a safe workplace, the claims Warren asserted and Sherwin settled. Because Turner accepted these obligations in a contract executed before Warren's injury occurred, ASIC, as Sherwin's subrogee, is entitled to pursue its breach of contract claim against Turner to establish what amount of damages, if any, were caused by Turner's negligence or fault and are thus covered by the indemnity agreement.

## C. Evidentiary Objections

Again, the Court's decision does not rest on any of the evidence to which objections were made. Therefore, all evidentiary objections are OVERRULED as moot.

## CONCLUSION

For the reasons set out above,

- ASIC's motion for summary judgment (D.E. 19) is GRANTED IN PART insofar as the Court holds that Sherwin was an additional insured under ACE's general liability policy (through Endorsement #27) and that ASIC, as Sherwin's subrogee, is entitled to pursue damages owed under the policy. ASIC's motion (D.E. 19) is DENIED IN PART without prejudice insofar as ASIC seeks reimbursement of the full amount paid in settlement of the *Warren* claim.

- ACE's cross-motion for summary judgment (D.E. 30) is DENIED in its entirety.

- Turner's motion for summary judgment (D.E. 29) is GRANTED IN PART insofar as the Court holds that Turner has complied with its obligation to provide insurance under MSA ¶ 10 and Turner is not required to indemnify Sherwin or Ingersoll for their own negligence or gross negligence under MSA ¶ 11. The motion (D.E. 29) is DENIED IN PART insofar as Turner seeks a take-nothing judgment on ASIC's claim for indemnity; the Court holds that ASIC may pursue claims against Turner that all or part of the Warren settlement represents payment for damages caused by Turner's negligence or fault.

ORDERED this 18th day of March, 2019.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE